**DENIED BY THE COURT**

By: _____
Hon. Andre Birotte Jr
U.S. District Judge

Dated: May 15, 2023

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B. WILLIAMS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>LOBEL FINANCIAL CORPORATION, et al.<br><br>　　　　Defendants. | Case No. 8:23-cv-00723-AB-SP<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS** |

## I.

## INTRODUCTION

On April 26, 2023, plaintiff B. Williams filed a Complaint against Lobel Financial Corporation and several of its employees, Fox Recovery Services and several of its employees, and the California Department of Motor Vehicles and its director. Plaintiff alleges violations of his civil rights, claims under the Consumer Financial Protection Act ("CFPA") and Fair Credit Reporting Act ("FCRA"), and various state law claims.

Also on April 26, 2023, plaintiff filed a motion for a temporary restraining

1

order ("TRO") and preliminary and permanent injunctions seeking the return of his repossessed van. Docket no. 2. For the reasons set forth below, plaintiff's motion is denied.

## II.
## **BACKGROUND**

Plaintiff alleges that on August 31, 2021, he purchased a 2012 Chrysler Town & County Touring Van from a small dealership called Royal Cars, Inc. Compl. ¶ 50. Plaintiff's purchase was financed through Lobel Financial Corporation. Compl. ¶ 49. Lobel representatives told plaintiff that in order to complete his loan application he was required to sign a Loss Damage Waiver ("LDW"). Compl. ¶¶ 51-55. The LDW provided that plaintiff would be charged a monthly fee of $101 if at any time during his contract term he failed to maintain acceptable insurance coverage on his vehicle. Compl. ¶¶ 53-55, Ex. 20. The LDW provided that upon Lobel's receipt of a buyer's proof of insurance, the LDW would terminate and Lobel would calculate any refund of the LDW monthly fee due to the buyer on a pro-rata basis. Compl. ¶ 55, Ex. 20.

Because plaintiff did have insurance, he did not expect to be charged fees under the LDW. Compl. ¶ 51. But after purchasing the van, he began getting letters from Lobel indicating Lobel did not have proof of plaintiff's insurance. Compl. ¶ 56, Ex. 21. In January and February 2022, plaintiff corresponded with a Lobel branch manager about the letters and related complaints, who told him she had escalated his complaint to Lobel's corporate offices. Compl. ¶¶ 57-59. Plaintiff did not hear back about his concerns and stopped receiving the letters from Lobel. Compl. ¶ 59.

About a year later, in January 2023, plaintiff noticed that although he made a timely car payment via mail for December 2022, the check had not been cashed or deposited. Compl. ¶ 60. Finding this unusual, he took out a money order and

attempted to deliver the payment in person to Lobel's Glendale branch. Compl. ¶ 60. The person plaintiff spoke with at Lobel informed him that the system was not accepting the payment and advised him to call Lobel's corporate offices. *Id.*

On January 31, 2023, plaintiff spoke on the phone with an employee at Lobel's corporate offices who informed plaintiff that because he was behind on his payments, his vehicle was going to be repossessed. Compl. ¶¶ 61-62. When plaintiff informed the employee that he had never made a late payment, the employee stated the problem might be additional fees charged to plaintiff's account for lacking insurance. Compl. ¶ 65. He advised plaintiff to send in proof of insurance for the time period January 2022-June 2022 to have the fees removed from his account. Compl. ¶¶ 64-65.

On February 1, 2023, plaintiff emailed Lobel the insurance declarations. Compl. ¶ 67. On February 14, 2023, plaintiff realized the size of the attachments had prevented the emails from being delivered, and on February 17, 2023, he re-sent the emails. Compl. ¶¶ 67-68.

Plaintiff then reviewed each of his billing statements and noticed that he had been charged the $101 LDW fee each month since January 2022 despite having provided proof of his insurance to the owner of the dealership where he bought the van. Compl. ¶ 71. He also noticed some of his payments were posted late, even though he had made the payments on time. *Id.* As a result of these alleged inaccuracies, his credit score decreased. *Id.*

Having now provided Lobel his proof of insurance, plaintiff expected his March 2023 billing statement to reflect a large credit. Compl. ¶ 73. But on March 16, 2023, plaintiff's van was repossessed over his protests, and towed away with many of his belongings inside. Compl. ¶¶ 74-80. Nonetheless, on March 18, 2023, plaintiff mailed a monthly payment to Lobel. Compl. ¶ 83. Plaintiff alleges that although the payment was signed for at Lobel, neither his March nor April

1  payments have been cashed or deposited.  Compl. ¶¶ 83-84.

2        Plaintiff states that on March 24, 2023, he filed a case in state court against
3  the California DMV and its director advising them that his vehicle was stolen and
4  putting them on notice that no sale, transfer of title, or new registration should be
5  authorized pending the outcome of the litigation.  Compl. ¶ 85.  On March 30,
6  2023, plaintiff received a notice of Lobel's intention to sell the vehicle.  Compl.
7  ¶ 86.  On April 26, 2023, he filed the Complaint in this case, along with the instant
8  motion for a TRO and preliminary and permanent injunctions.

## III.
## DISCUSSION

11        Plaintiff requests a TRO and preliminary and permanent injunctions for the
12  return of his van and its contents.

13        A preliminary injunction is "an extraordinary and drastic remedy, one that
14  should not be granted unless the movant, *by a clear showing*, carries the burden of
15  persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L.
16  Ed. 2d 162 (1997) (per curiam) (internal quotations marks and citation omitted).
17  The plaintiff bears the burden to establish that "he is likely to succeed on the
18  merits, that he is likely to suffer irreparable harm in the absence of preliminary
19  relief, that the balance of equities tips in his favor, and that an injunction is in the
20  public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.
21  Ct. 365, 172 L. Ed. 2d 249 (2008) (citations omitted).  Alternatively, where there
22  are merely "serious questions going to the merits," the moving party may still
23  obtain a preliminary injunction where the balance of hardships "tips sharply" in the
24  moving party's favor, and where the moving party also shows a likelihood of
25  irreparable injury and that an injunction is in the public interest.  *Alliance for the*
26  *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The standard for a
27  permanent injunction is essentially the same as for a preliminary injunction, except

that a litigant must actually succeed on the merits. *Sierra Club v. Penfold*, 857 F.2d 1307, 1318 (9th Cir. 1988).

Where a plaintiff has not made the minimum showing of irreparable injury, it is not necessary for the Court to decide whether the plaintiff is likely to succeed on the merits. *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1378 (9th Cir. 1985). Likewise, if the moving party "fails to show that he has some chance on the merits, that ends the matter." *Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (citation omitted).

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons it should not be required." Fed. R. Civ. P. 65(b)(1).

Here, plaintiff has not certified any efforts to give notice or the reasons it should not be required. As such, a TRO is out of the question. As for a preliminary injunction, plaintiff alleges violations of his civil rights, claims under the CFPA and FCRA, and various state law claims.[1] But it is not clear the Complaint states a federal claim, and therefore not clear the Court has jurisdiction over plaintiff's case. Absent a viable claim under federal law, this Court will not exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c).

Plaintiff cannot state a federal civil rights claim because he brings those claims only against private parties who were not acting under color of state law. A claim under § 1983 must embody at least two elements: (1) the plaintiff must have

---

[1] Although plaintiff lists 61 claims on the cover pages of his Complaint, he lists only 15 causes of action in the Complaint's body.

5

been "deprived of a right 'secured by the Constitution and the laws' of the United States"; and (2) the plaintiff must have been deprived of this right by a defendant acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978). Generally, private parties are not acting under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). Action by a private party may be under color of state law "where there is a significant state involvement in the action." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam) (cleaned up) (finding allegation that ambulance company was under contract with state sufficient to allege state action by company). Plaintiff brings his civil rights claims against private parties and has not shown any state involvement in the events he alleges. Further, he cannot state a CFPA claim because the CFPA does not provide for a private right of action. *Normela Upshaw v. U.S. Dep't of Educ.*, 2017 WL 7171525, at *3 (C.D. Cal. Sept. 18, 2023) ("[T]he CFPA is not itself a cause of action nor does it provide for a private right of action.").

     Plaintiff comes closest to stating a federal claim under FCRA against Lobel Financial Corporation for violation of 15 U.S.C. § 1681s-2(b), which sets forth certain duties imposed on sources that provide information to Credit Reporting Agencies ("CRAs"), or "furnishers." Furnishers' duties under that section are triggered "upon notice of dispute" pursuant to § 1681i(a)(2). Under that section, when a consumer notifies a CRA of a dispute, the CRA is required to provide notice of the dispute to the furnisher who was the source of that information. After receiving such notice, § 1681s-2(b) requires the furnisher to conduct an investigation into the disputed information and report its findings to the CRA. The duties § 1681s-2(b) imposes on furnishers are not triggered when a furnisher receives notice of a dispute directly from a consumer. *See* 15 U.S.C. § 1681s-2(b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 1009)

(reiterating that furnishers' duties under § 1681s-2(b) "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)"); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 n.8 (1st Cir. 2010) ("A notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under § 1681s-2(b)").

Here, it is not clear that Lobel was provided notice sufficient to trigger its responsibilities under § 1681s-2(b). Plaintiff states he initiated a dispute with the CRAs and with Lobel directly. Compl. ¶¶ 154-56. He states that in response to his dispute, Lobel verified to the CRAs that its information was accurate. Compl. ¶ 154. But nowhere does plaintiff explicitly allege that the CRAs provided Lobel notice of the dispute pursuant to § 1681i(a)(2), and absent such notice, Lobel's duties to investigate under § 1681s-2(b) were not triggered. As such, it is not clear that plaintiff has stated a claim under FCRA. If plaintiff fails to state a claim under FCRA, then his federal claims are all subject to dismissal.

Even if plaintiff is able to state a claim under FCRA, he has not shown a likelihood of success on the merits such that he should be awarded injunctive relief. As explained above, plaintiff has not shown that Lobel's duties under § 1681s-2(b) were triggered by receiving sufficient notice of his dispute. But even assuming Lobel did receive sufficient notice, in order to succeed on the merits, plaintiff would also need to show that Lobel failed to fulfill its duties under § 1681s-2(b), which requires the furnisher to:

    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
    (C) report the results of the investigation to the consumer reporting agency;

1      (D) if the investigation finds that the information is incomplete or
2      inaccurate, report those results to all other consumer reporting
3      agencies to which the person furnished the information and that
4      compile and maintain files on consumers on a nationwide basis; and
5      (E) if an item of information disputed by a consumer is found to be
6      inaccurate or incomplete or cannot be verified after any reinvestigation
7      under paragraph (1), for purposes of reporting to a consumer reporting
8      agency only, as appropriate, based on the results of the reinvestigation
9      promptly—
10     (i) modify that item of information;
11     (ii) delete that item of information; or
12     (iii) permanently block the reporting of that item of information.
13 15 U.S.C. § 1681s-2(b)(1).
14     Here, plaintiff alleges that "in a response to Plaintiff's dispute to the credit
15 bureau's [sic] early on that Lobel Financial Corporation did verify to Equifax,
16 Trans Union and Experian that its reporting of its Lobel Financial Corporation
17 Tradeline was accurate."  Compl. ¶ 154.  He also alleges that "[a]fter being
18 informed by Plaintiff of the monthly disputed payment amount and the accuracy of
19 the information Lobel Financial Corporation was providing, Lobel Financial
20 Corporation negligently and willfully failed to conduct a proper investigation of
21 Plaintiff's dispute as required by 15 U.S.C. 1681s-2(b)" by "fail[ing] to direct
22 Equifax, Trans Union and Experian to report the correct Lobel Financial
23 Corporation Tradeline with the monthly payment amount of $302.93¢."  Compl.
24 ¶¶ 156-57.  But plaintiff makes no factual allegations to support his bare assertions
25 that Lobel fell short of its obligations under FCRA.  He alleges no facts, for
26 example, regarding how or when he notified a CRA of his dispute, nor any facts
27 about the sufficiency of the notice the CRA allegedly provided Lobel.  Further, he
28

alleges no facts supporting his assertion that Lobel failed to conduct a proper investigation under § 1681s-2(b), for example, factual allegations about why Lobel's investigation failed to meet the criteria outlined above, or that it failed to conduct any investigation at all. As such, plaintiff has not shown a likelihood of success on the merits of his FCRA claim, much less any other federal claim.

Moreover, even if plaintiff had demonstrated a likelihood of success on the merits, he has not shown he is likely to suffer irreparable harm in the absence of preliminary relief. "[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992); *see Weinberger v. Romero Barcelo*, 456 U.S. 305, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982). For injunctive relief, "[i]t is usually enough if the plaintiff shows that its legal remedies are inadequate." *Ross Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996); *see Weinberger*, 456 U.S. at 312. "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Ross Simons*, 102 F.3d at 18. "Typically, monetary harm does not constitute irreparable harm." *Cal Pharmacists Ass'n v. Maxwell Jolly*, 563 F.3d 847, 851 (9th Cir. 2009). "Economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award." *Id.* at 852.

Here, plaintiff alleges the loss of his van and its contents has caused him financial harm by preventing him from being able to work and depriving him of valuable personal belongings. He does not allege that any of his belongings have specific non-monetary value such that monetary damages could not compensate for their loss. As such, plaintiff's harm is primarily economic in nature and can be

addressed through legal remedies.  Consequently, there is no basis to find court intervention is needed to prevent irreparable harm to plaintiff.

For these reasons, plaintiff's motion for a TRO and preliminary and permanent injunctions must be denied.  Plaintiff is advised that the Los Angeles Federal Pro Se Clinic offers information and guidance to individuals who are representing themselves in federal civil actions.  The Los Angeles Federal Pro Se Clinic operates by appointment only. You may schedule an appointment either by calling the Clinic at (213) 385-2977, ext. 270 or by submitting a request at the following website: http://prose.cacd.uscourts.gov/los-angeles

IT IS THEREFORE ORDERED that plaintiff's motion for a temporary restraining order and preliminary and permanent injunctions (docket no. 2) **is DENIED**.

DATED:

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE